UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CATHERINE CAMPBELL, | CASE NO. 2:23-cv-00637-JHC |
| Plaintiff, | |
| | ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (DKT. # 10) |
| v. | |
| JANET YELLEN, | |
| Defendant. | |

# I

## INTRODUCTION

This matter comes before the Court on Defendant's Motion for Partial Judgment on the Pleadings. Dkt. # 10. Plaintiff Catherine Campbell alleges that Defendant Janet Yellen, in her official capacity as the United States Secretary of the Treasury and through the Internal Revenue Service (IRS),[1] created a hostile work environment and engaged in acts of employment discrimination and retaliation. *See* Dkt. # 1. The IRS seeks partial dismissal under Federal Rule of Civil Procedure 12(c), contending that some of Campbell's claims are based on events that

---

[1] For brevity, this order refers to Defendant as "the IRS."

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 1

"were not the subject of timely exhaustion." Dkt. # 10 at 1. Because Campbell failed to timely exhaust certain claims before filing this action, the Court GRANTS the motion.

## II

### BACKGROUND

The factual background herein derives from the allegations in the complaint, *see* Dkt. # 1, which the Court accepts as true on a Rule 12(c) motion. The Court also includes some facts based on the administrative record in this case.[2]

Campbell is a 76-year-old woman who worked as an IRS attorney from November 1984 to November 14, 2020. *Id.* at 2 ¶ 2.1.[3] In March 2019, Melissa Lang was promoted to Associate Area Counsel and became Campbell's supervisor. *Id.* at 3 ¶¶ 5.3–5.4. At various times before Lang's promotion, and while Lang was her supervisor, Campbell informed her colleagues that she suffered from osteoarthritis in her hands, which affected her coordination and typing speed. *Id.* at 3 ¶ 5.5; *see* Dkt. # 14 at 2. On April 16, 2019, Lang began to deny Campbell's requests to use credit hours, a practice that previously accommodated her osteoarthritis. Dkt. # 1 at 4 ¶¶ 5.6, 5.9. Lang then started to act increasingly hostile to Campbell's "use of time, work performance, and work product." *Id.* at 4 ¶ 5.7. Lang reassigned many of Campbell's cases to "younger, non-disabled attorneys with far less experience[,]" gave Campbell a performance improvement plan, and proposed that Campbell be placed on a three-day suspension. *Id.* at 4 ¶¶ 5.8–5.9. Despite Campbell's requests to use credit hours and identification of assisting devices to accommodate

---

[2] The parties agree that the Court may take judicial notice of certain administrative records because they are matters of public record and matters on which the complaint necessarily relies. *See* Dkt. # 10 at 4 n.1; Dkt. # 14 at 1 n.1, 2, 12, 17–20. The Court takes judicial notice of these records but does not take judicial notice of the truth of any matter asserted therein. *See Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1161–62 (W.D. Wash. 2016).

[3] The complaint erroneously states that Campbell was employed by the IRS until November 14, 2021. Dkt. # 1 at 2 ¶ 2.1. The parties do not dispute that the complaint contains several typographical errors such as this one. *See* Dkt. # 10 at 4 n.1; Dkt. # 14 at 6 n.2. The administrative record, including an affidavit from Campbell, shows that she retired in 2020. *See* Dkt. # 11-7 at 13.

1

2

her disability, the IRS either did not provide them or did not adequately implement them.  *Id.* at 4–5 ¶ 5.9.

3

4

5

6

7

8

Between March 2019 and her separation, Campbell "experienced the conduct engaged in by [Lang] as a hostile work environment due to her age, protected activity[,] and disability, culminating with her constructive discharge to preserve her mental and physical health."  Dkt. # 1 at 5 ¶ 5.11.  During this time, Lang "did not engage in the level of scrutiny, micro-management and assignment practices she engaged in with Plaintiff with younger, non-disabled attorneys."  Dkt. # 1 at 5 ¶ 5.12.

9

10

11

12

Campbell filed three formal Equal Employment Opportunity (EEO) complaints before bringing this action.  Campbell first contacted an EEO counselor on May 17, 2019.  Dkt. # 1-1 at 3.  On June 24, 2019, she filed her first EEO complaint.[4]  *Id.* at 2.  The issues accepted for investigation were:

13

14

15

16

17

18

19

20

> Was [Campbell] harassed based on age (YOB: 1946), disability, and prior protected activity, beginning in March 2018, when:
>
> A. she was required to use her Lyne Communication System while in the office;
>
> B. her request to work credit hours as a Reasonable Accommodation was denied (April 16, 2019 - present);
>
> C. she was treated unfairly regarding assignments and time and attendance;
>
> D. her manager verbally berated her, made comments about her tenure with IRSCC and called her unprofessional; and
>
> E. on June 14, 2019, she received a performance appraisal that she described as an indication of an intent to classify her work as unsatisfactory?

21

22

Dkt. # 11-1 at 9.  No final agency action had occurred on this claim as of the filing of the complaint.  Dkt. # 1 at ¶¶ 4.1–4.3.

23

24

---

[4] Agency No. IRSCC-19-1046-F.

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 3

Campbell initiated her second contact with an EEO counselor on March 9, 2020.  Dkt. #

11-2 at 12–14.  On April 19, 2020, she filed her second EEO complaint.[5]  *See id.* at 2.  The

issues accepted for investigation were:

> Whether [Campbell] was subjected to discrimination, including harassment, in
> reprisal for prior EEO activity, when:
>
> 1.  On February 3, 2020, management issued [Campbell] a written counseling
>     memorandum regarding alleged disclosure of Personally Identifiable
>     Information (PII);
>
> 2.  On March 3, 2020, management issued [Campbell] a reprimand regarding
>     another alleged disclosure of PII and a suspension of her telework; and
>
> 3.  On various dates, [Campbell] was subjected to various acts of harassment,
>     including but not limited to:
>
>     a.  She has been prohibited from signing off on correspondence and pleadings
>         that she drafted;
>     b.  She has been denied requests to work credit hours while other attorneys
>         were allowed to work credit hours;
>     c.  She has been required to email her supervisor explaining all of her
>         movements during the work day;
>     d.  Her travel reports for attendance at out-of-state conferences were
>         scrutinized; and
>     e.  She was not included in a group of attorneys and Revenue Agents who meet
>         to discuss concerns and issues of case development.

*Id.* at 15.

On November 17, 2020, the United States Department of the Treasury released its Final

Agency Decision (FAD) on the second EEO complaint and found no discrimination.  Dkt. # 1 at

2 ¶ 4.2; Dkt. # 11-3 at 1–11.  Campbell appealed the FAD to the United States Equal

Opportunity Commission's (EEOC) Office of Federal Operations and, on July 19, 2022, the

EEOC Office of Federal Operations affirmed the agency's finding of no discrimination.  Dkt. #

11-4 at 2–9.  On August 18, 2022, Campbell submitted a request for reconsideration.  *See* Dkt. #

---

[5] Agency No. IRSCC-20-0370-F.

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 4

11-5.  On February 2, 2023, the EEOC concluded that there was "no basis to disturb the Commission's prior decision" and denied her request.  *See* Dkt. # 11-6 at 4.

On September 14, 2020, Campbell submitted her notice of intent to retire effective on November 14, 2020.  Dkt. # 11-7 at 36.[6]  On November 13, 2020, 60 days after submitting her written notice of the intent to retire, *see id.*, Campbell contacted an EEO counselor for a third time.  *Id.* at 5.  On February 3, 2021, Campbell filed her third and final EEO complaint.[7]  *Id.* at 2–4.  The issues accepted for investigation were:

> Whether [Campbell] was constructively discharged based on her age (YOB: 1946), disability, and in reprisal for protected EEO activity, when she retired on November 14, 2020, after she received an "Unsatisfactory" performance appraisal and on September 3, 2020, was given a notice of opportunity to demonstrate acceptable performance; and on September 10, 2020, was issued a notice of a proposed three (3) day suspension.  [Campbell] alleged that management told her it would suspend the notice of opportunity to demonstrate acceptable performance and notice of proposed suspension if she retired by mid-November 2020.

*Id.* at 8.  On June 2, 2021, the Department of the Treasury issued an FAD on the third EEO complaint, finding no discrimination and no constructive discharge when Campbell retired from the IRS.  *See* Dkt. # 11-8 at 19.

On June 30, 2021, Campbell appealed the FAD.  Dkt. # 11-8 at 2–7.  On September 16, 2021, the Merit Systems Protection Board (MSPB)[8] issued a finding that it lacked jurisdiction over Plaintiff's claim because her decision to retire was voluntary and she was not constructively discharged.  *See* Dkt. # 11-9 at 2–10.  This decision became final on October 21, 2021.  *Id.* at 10. On or about December 5, 2021, Campbell requested an EEOC hearing regarding the

---

[6] Although the complaint assigns the incorrect date, this order provides the correct one.  *See* Dkt. # 1 at 5 ¶ 5.10; Dkt. # 14 at 3.

[7] Agency No. IRSCC-21-0098-F.

[8] Because the EEOC classified Campbell's claim as one that involved "a personnel action within the jurisdiction of the MSPB with allegations of discrimination within the jurisdiction of the EEOC," it designated it as a "mixed case" and determined that any hearing would be before the MSPB.  Dkt. # 11-7 at 8.  Campbell's appeal was therefore first submitted to the MSPB.

1  discrimination claims from the MSPB appeal.  Dkt. # 11-10.  No final agency action on this

2  claim had occurred as of the filing of this action.  Dkt. # 1 at 3 ¶ 4.3.

3     Campbell filed this case May 1, 2023.  *See id.*  She claims (1) disparate treatment, hostile

4  work environment, and constructive discharge in violation of the Age Discrimination in

5  Employment Act (ADEA), *see* 29 U.S.C. § 621 *et seq.*; Dkt. # 1 at 6–7 ¶¶ 6.1–6.8; (2) disparate

6  treatment, hostile work environment, constructive discharge, and failure to accommodate

7  disability in violation of the Rehabilitation Act of 1973, *see* 29 U.S.C. 701 *et seq.*; Dkt. # 1 at 7

8  ¶¶ 7.1–7.8; and (3) retaliatory hostile work environment, disparate treatment, and constructive

9  discharge, in violation of 29 U.S.C. §§ 794, 633a; Dkt. # 1 at 8–9 ¶¶ 8.1–8.6.

### III
#### LEGAL STANDARDS

12     Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—

13  a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the

14  pleadings is proper when the moving party clearly establishes on the face of the pleadings that no

15  material issue of fact remains to be resolved and that [they are] entitled to judgment as a matter

16  of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.

17  1990).  Because a motion for judgment on the pleadings is "functionally identical" to a motion to

18  dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion.  *Dworkin*

19  *v. Hustler Mag.*, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989); *Cafasso v. Gen. Dynamics C4 Sys.,*

20  *Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).

21     When considering a Rule 12(c) motion, courts may consider the pleadings, documents

22  attached to the pleadings, documents incorporated therein, or matters of judicial notice.  *Cf.*

23  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Knievel v. ESPN*, 393 F.3d 1068,

24  1076 (9th Cir. 2005).  Courts must accept the non-moving party's well-pleaded factual

1

2

3

allegations as true and draw all reasonable inferences in favor of the non-moving party. *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

4

5

**IV**

**DISCUSSION**

6

7

8

9

10

11

12

13

The IRS moves to dismiss Campbell's claims based on constructive discharge and discrete acts of retaliation and discrimination raised for the first time in her third EEO complaint, arguing that she "has neither exhausted her administrative remedies nor given the EEOC the requisite notice under the ADEA as to those claims prior to bringing this suit in federal court." Dkt. # 10 at 8.  Campbell opposes, responding that she filed her third EEO complaint was timely. Dkt. # 14 at 7.  Campbell also asserts that her third EEO complaint "grows out of and relates to the prior filings and thus technical exhaustion is not required as under private sector Title VII cases." *Id.*

14

A.     Constructive Discharge

15

16

17

18

19

20

21

22

23

24

The IRS contends that, under *Green v. Brennan*, 578 U.S. 547 (2016), all of Campbell's "claims and prayers for relief arising out of her alleged constructive discharge should be dismissed because [she] failed to seek EEO counseling within 45 days and thus did not exhaust her administrative remedies." Dkt. # 10 at 9.  The IRS says that the applicable regulations require federal employees to contact an EEO counselor within 45 days of the occurrence of a discriminatory act or personnel decision "in order to informally resolve the matter." *Id.* at 8–9 (citing 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.")).  According to the IRS, because Campbell "did not seek EEO counseling for her third complaint until November 13, 2020," 60

days after her constructive discharge claim accrued, she failed to timely administratively exhaust these claims. *Id.* at 9.

The IRS also says that because constructive discharge is a discrete act and gives rise to a distinct claim, Campbell may not argue that she administratively exhausted her constructive discharge claim through first and second EEO complaints. *Id.* at 9–10 (citing *Diefenderfer v. Peters*, No. C08-958Z, 2009 WL 1884419, at *4 (W.D. Wash. June 29, 2009); *Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981)). According to the IRS, Campbell's "first and second EEO complaints pre-dated her decision to resign, and thus did not, and could not, contain allegations of both elements of constructive discharge." *Id.* at 10. Further, the IRS contends that Campbell's "constructive discharge claim could not have been considered by the EEO as part of its investigation into [Campbell's] first or second complaints because those investigations were already complete before [her] September 14, 2020 notice of resignation." *Id.* (citing Dkt. # 11-13; *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003)). The IRS also moves to strike Campbell's "prayer for relief arising out of her resignation[.]" *Id.* at 11.

Campbell responds that she has exhausted her administrative remedies for her constructive discharge claim. She says that the Court should not rely on *Green* because it is based on different facts and does not stand for the proposition outlined by the IRS. Dkt. # 14 at 12. According to Campbell, because the employee in *Green* "signed an agreement to resign or retire in the face of criminal charges or take a significant demotion"—while she did not enter into any such agreement and was eligible for voluntary retirement—*Green* does not control. *Id.* at 12–13. Campbell concludes that when "an employee maintains ultimate control over their decision, the reasons compelling the separation decision only logically constitutes an actionable claim of constructive discharge logically at the time of the loss of employment." *Id.* at 13.

The Court disagrees with Campbell.  In *Green*, "Green and the Postal Service signed an agreement whose meaning remains disputed[,]" which provided that "the Postal Service promised not to pursue criminal charges in exchange for Green's promise to leave his post in Englewood."  578 U.S. at 551.  "The agreement also apparently gave Green a choice: effective March 31, 2010, he could either retire or report for duty in Wamsutter, Wyoming—population 451—at a salary considerably lower than what he earned in his Denver suburb."  *Id.*  Green chose to retire and resigned on February 9, 2010, effective March 31, 2010.  *Id.*

The Supreme Court considered what constituted the "matter alleged to be discriminatory" that triggered the 45-day limitations period under 29 C.F.R. § 1614.105(a)(1).  It sought to resolve a Circuit split, weighing the views of certain Circuits that held that "the limitations period begins to run for a constructive-discharge claim after the employer's last discriminatory act[,]" and other Circuits that held "that the limitations period for a constructive-discharge claim does not begin to run until the employee resigns."  *Id.* at 552.  The Supreme Court concluded that that "a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation."  *Id.* at 564.  The Supreme Court also declined to resolve the fact issue of when Green gave his notice of resignation to the Postal Service and remanded it to the Tenth Circuit for determination.  *Id.*

The holding in *Green* is clear: For a constructive discharge claim, the limitations period starts when the employee submits their notice of resignation.  Further, the Supreme Court's holding does not hinge on the type of agreement signed by Green and the Postal Service.  The Supreme Court instead decided that the meaning of this agreement was "disputed" and declined to decide when Green's notice of resignation had occurred.  *Id.* at 551, 564.  Here, the parties do not dispute that Campbell submitted her written notice of her intent to retire on September 14, 2020, and that 60 days later—past the prescribed 45-day deadline—Campbell contacted an EEO

counselor for the third time.  Dkt. # 11-7 at 5, 36; *see* 29 C.F.R. § 1614.105(a)(1).  Although

Campbell suggests that there was no evidence that she had the subjective intent to retire on

November 13, 2020, when she submitted this notice, *see* Dkt. # 14 at 7, this is not a relevant

consideration under *Green*.

   For these reasons, the Court concludes that Campbell failed to timely administratively

exhaust the claims of her third EEO complaint.

B.  Estoppel and Waiver

   Campbell contends that, even if she failed to timely administratively exhaust the claims

of her third EEO complaint, the IRS should be "estopped from asserting timeliness as a basis for

dismissal when it accepted her theory of relief and authorized her to litigate this claim fully."[9]

Dkt. # 14 at 13.  This is because, according to Campbell, the IRS "never at any stage, including

in issuing its final agency decision (FAD), ever asserted that her constructive discharge

complaint was untimely."  *Id.* at 4 (emphasis removed).  For this argument, Campbell relies on

an out-of-Circuit case, *Ramirez v. Sec'y, U.S. Dep't of Transp.* 686 F.3d 1239, 1254 (11th Cir.

2012) (holding that both the Department of Transportation and the district court were bound by

the EEOC's finding that the administrative charge was timely when Department of

Transportation did not challenge this administrative ruling and later denied relief to the plaintiff

on the merits) (citing *Girard v. Rubin*, 62 F.3d 1244 (9th Cir. 1995)).  She says that the IRS

---

[9] Campbell also says that the IRS "appears to assert that the 45-day rule is 'jurisdictional' and that if the Court concludes that the November 13ᵗʰ contact with the EEO counselor makes certain allegations complaint untimely, the Court does not have the power to decide the case."  Dkt. # 14 at 13.  But in its motion, the IRS recognizes that "absent waiver, estoppel, or equitable tolling" the failure to comply with administration exhaustion forecloses a discrimination claim and does not contend that the Court lacks jurisdiction here.  Dkt. # 10 at 9 (citing *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009).  Because the parties do not dispute whether administrative exhaustion is a jurisdictional question, which it is not, the Court does not address this argument.  *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) ("[T]he filing period is not a jurisdictional prerequisite to filing a Title VII suit.  Rather, it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'").

must be estopped from only now arguing there is no conceivable basis for a constructive discharge after its agents accepted her complaint under that theory, investigated it fully and never raised any allegation of failure to meet the 45-day rule at any time below.  Thus it made a [de facto] finding that the complaint was timely filed and never challenged that in any of many proceedings that followed before reaching this Court.

Dkt. # 14 at 10.[10]

The IRS responds that Campbell's position is contradicted by *Boyd v. United States Postal Service*, which holds that "mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination."  752 F.2d 410, 414 (9th Cir. 1985); Dkt. # 15 at 5 (also citing *Lassair v. Wilkie*, No. 2:17-01638-RAJ, 2019 WL 5212959, at *3 (W.D. Wash. Oct. 16, 2019); *Valadez v. Potter*, No. C06-0329RSL, 2008 WL 426504, at *3 (W.D. Wash. Feb. 13, 2008)).

The IRS also contends that Campbell's use of *Girard* is misplaced and that *Boyd* controls, because here, as in *Boyd*, the administrative record of Campbell's third EEO complaint lacks any "affirmative finding in the record" of timeliness.  Dkt. # 15 at 6 (citing Dkt. # 14 at 10).  The IRS says that because *Boyd* controls and "because it is undisputed that the agency's investigation into [Campbell]'s third EEO complaint did not result in an administrative finding of discrimination, *Boyd* is fatal to Plaintiff's argument for estoppel."  *Id.*

In *Boyd*, a Postal Service employee left his position to enlist in the Army and complete a tour in Vietnam.  752 F.2d at 412.  He was later honorably discharged and reinstated by the

---

[10] Campbell also adds that the IRS "forced her through an unnecessary detour to the Merit Systems Protection Board by attaching an appeal form to its final decision on her constructive discharge complaint suggesting that quasi-judicial body was the proper forum for adjudication of that issue as an 'involuntary retirement.'"  Dkt. # 14 at 4.  It does not seem that this fact should affect the Court's estoppel or waiver analysis—especially when Campbell acknowledges that "the MSPB properly declined jurisdiction[,]" *see id.*—so the Court does not consider this point.

1    Postal Service in 1971.  *Id.*  In December 1977, Boyd abandoned his job, and later resigned on

2    March 7, 1978.  *Id.*  In 1980 he was diagnosed with post-traumatic stress disorder.  *Id.*  After

3    starting therapy, Boyd applied for reinstatement at the Post Office and in 1981 the Postal Service

4    denied both his reinstatement request and his later request for reconsideration.  *Id.*  Boyd then

5    sued the Postal Service under the Rehabilitation Act of 1973.  *See* 29 U.S.C. §§ 791, 794.  After

6    a bench trial, the district court dismissed Boyd's discrimination claim, *see Boyd v. U.S. Postal

7    Serv.*, No. 82-126R, 1983 WL 636 (W.D. Wash. Aug. 1, 1983), because the applicable

8    regulations required that a complainant bring their grievance to the attention of the EEO

9    counselor within 30 days of the effective date of the personnel action, and Boyd had not filed

10   within this limitations period.  *Boyd*, 752 F.2d at 414 (citing 29 C.F.R. § 1613.214(a)(i) (1984)).

11   On appeal, Boyd argued that because the Post Office had accepted his untimely complaint and

12   began an investigation, "it waived the right to contest timeliness and extended the time limit

13   pursuant to the regulations."  *Id.*  The Ninth Circuit disagreed, holding that the "mere receipt and

14   investigation of a complaint does not waive objection to a complainant's failure to comply with

15   the original filing time limit when the later investigation does not result in an administrative

16   finding of discrimination."  *Id.*

17         Around seven months after *Boyd*, the Ninth Circuit published *Girard*.  62 F.3d 1244.

18   There, the Ninth Circuit considered an IRS officer's appeal of a district court's summary

19   judgment order, which determined that he failed to file his Title VII and age discrimination

20   claims within the limitations period.  *Id.* at 1244.  In 1983, Girard was accepted into a Regional

21   Management Careers Program (RMCP), which created "a pool of well-qualified candidates who

22   have been recommended for management positions."  *Id.* at 1245.  After not being selected for a

23   supervisory role within the IRS in 1984 and 1985, Girard claimed that an IRS supervisor

24   unilaterally removed him from the RMCP.  *Id.*  On July 30, 1987, "the IRS sent a letter to Girard

proposing to suspend him for three days for failing to protect the interest of the federal government by allowing a statute of limitations to lapse" and on October 14, 1987, Girard filed a formal complaint of discrimination with the IRS based on his treatment in the RCMP.  In response, the IRS Regional Complaints Center (RCC) requested more information as to why Girard "had waited three years to file a complaint based on his non[-]selection for a management position in 1984 and early 1985." *Id.*  Girard responded that "it was not until he had gone to the EEO counselor that he learned that [his] Field Branch Chief[] did not have the authority to remove him from the RMCP." *Id.*  The IRS then rejected the complaint as untimely and Girard appealed the decision to the EEOC; the EEOC reversed, determining that Girard's "claim that he was removed from the RMCP based on his age, race, and sex was timely because he 'could not have reasonably known that his discharge from the RMCP was unauthorized and improper until he was told this fact by the EEO Counselor.'" *Id.*  The IRS did not seek further review of the EEOC's decision and the RCC issued a proposed disposition finding of no discrimination. *Id.* at 1246.  After a hearing before an EEOC administrative judge, who determined that Girard was improperly removed from the RMCP, in 1992, "the IRS issued a final agency decision rejecting all of Girard's discrimination claims on their merits.  Girard appealed that decision to the EEOC, which affirmed the final agency decision on July 8, 1993." *Id.*  Girard then filed his action in federal court, which the district court dismissed on summary judgment, determining that "Girard had not complied with the relevant thirty-day statute of limitations because he had waited nearly three years to file his administrative complaint." *Id.*

On appeal, the IRS argued that, under *Boyd*, Girard's claims were untimely; but the Ninth Circuit disagreed.  Distinguishing *Boyd*, the Ninth Circuit stated that

> The IRS did not receive and accept Girard's complaint and begin investigating, only to determine later that the filing was untimely.  Quite the contrary.  The IRS dismissed Girard's complaint for failure to comply with the statute of limitations; *it*

1
2
3
4
5
6
7

> *made an express finding at the very beginning that the complaint was not timely*. *Cf. Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir.1992) (no agency waiver of timeliness argument because agency did not make a specific finding that the submission was timely, nor did the EEOC make such a finding); *Shea v. Tisch*, 870 F.2d 786, 788 (1st Cir.1989) (per curiam) (where agency had "expressly concluded plaintiff's filing was timely" it was barred from alleging in federal court that plaintiff had failed to comply with thirty-day time limitation). But the IRS did not have the final say on the matter. The EEOC's Office of Review and Appeals found that the complaint was timely. It remanded the proceedings to the IRS and directed it to begin an investigation. *That was a final binding order on the IRS, with which it had to comply unless it filed a motion to reopen within thirty days. See* 29 C.F.R. §§ 1613.234–.237; *Smith v. Kaldor*, 869 F.2d 999, 1006 n. 6 (6th Cir.1989) ("A decision by the Office of Review and Appeals is final unless, within 30 days of receipt, either party files a timely request to reopen[.]").

8

*Girard*, 62 F.3d at 1247 (emphasis added).

9
10
11
12
13
14
15
16

The Ninth Circuit determined that, unlike *Boyd*, it was a material distinction that "[t]he IRS neither appealed nor refused to proceed; instead, it began an investigation[,]" and concluded that "[b]ecause that issue has already been resolved against it by a binding decision of the EEOC, the IRS may not now raise the argument that it did not waive the timeliness argument." *Id.* Therefore, under *Girard*, a government agency "cannot in its EEOC form say that the employee may go forward, while in its IRS form it says he may not. Once the EEOC determined that Girard was entitled to pursue his discrimination claims the IRS was not entitled to ask a court to hold otherwise." *Id.* at 1248.

17
18
19
20
21
22
23
24

The Court agrees with the IRS that *Boyd* controls here. The parties do not dispute that, as in *Boyd*, the administrative record of Campbell's third EEO complaint does not include an affirmative finding of untimeliness and her complaint did not result in an administrative finding of discrimination. Campbell says as much, stating that the agency never raised the issue of timeliness in the administrative proceedings, which is the precise factual distinction between *Boyd* and *Girard*. *See* Dkt. # 14 at 10; *see Farrens v. Esper*, 806 F. App'x 539, 541 (9th Cir. 2020) (unpublished memorandum citing *Boyd*); *Adeyemi v. Garland*, No. EDCV 21-2107

(KKX), 2022 WL 3643646, at *5 (C.D. Cal. July 14, 2022) ("While 'mere receipt and investigation' of a complaint does not amount to waiver, here the document affirmatively represented that BOP reviewed Mr. Adeyemi's allegations for compliance with the 45-day requirements and specified the allegations that were time-barred."); *Valadez v. Potter*, No. C06-0329RSL, 2008 WL 426504, at *3 (W.D. Wash. Feb. 13, 2008) (citing the *Boyd* holding).

For these reasons, and because the "mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination," *Boyd*, 752 F.2d at 414, Campbell's contention that the IRS waived the issue of timeliness is unavailing.[11]

C.     Discrete Retaliatory or Discriminatory Acts

The IRS also says that, like Campbell's constructive discharge claim, all of her "claims arising out of alleged discrete retaliatory or discriminatory acts that post-date her second EEO complaint should be dismissed because [she] did not exhaust her administrative remedies."  Dkt. # 10 at 11.  According to the IRS, Campbell's third EEO complaint alleged three instances of retaliation that "post-date, and were not part of, any earlier complaint":

- On June 5, 2020, [Campbell] received an "unsatisfactory" performance rating;
- On September 3, 2020, [Campbell] received a notice of opportunity to demonstrate acceptable performance and a 30-day performance improvement plan; and
- On September 10, 2020, [Campbell] received a notice of a proposed three-day suspension for failure to follow supervisory instructions and unprofessional conduct.

_____

[11] Although Campbell contends that, under *Girard*, the IRS should be estopped from making its untimeliness arguments, that case discusses waiver, not estoppel.  62 F.3d at 1247 ("Because we base our decision on waiver grounds, we need not and do not address Girard's tolling and estoppel claims.").  Because Campbell does not otherwise squarely address estoppel, the Court does not address this remedy any further.  Similarly, Campbell does not argue that the Court should apply the doctrine of equitable tolling, nor does the Court believe at it would apply here.  *See Boyd*, 752 F.2d at 414 ("Finally, nothing in this record compels the application of the principles of estoppel or equitable tolling.  Boyd was not affirmatively misled by a Postal Service official nor was he unaware of the appropriate administrative procedures.").

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 15

*Id.* at 11–12 (citing Dkt. # 11-7 at 3).

The IRS contends that *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), precludes any argument that these claims were exhausted by Campbell's first and second EEO complaints, because "discrete discriminatory acts are not actionable if time barred, even when they [are] relate[d] to acts alleged in timely filed charges." Dkt. # 10 at 12 (also citing *Scott v. Gino Morena Enter., LLC,* 888 F.3d 1101, 1113 (9th Cir. 2018)). Because *Morgan* and *Scott* apply "squarely to the facts of this case," the IRS contends that Campbell's discrete retaliation allegations "post-dating her last timely EEO complaint should be dismissed." *Id.*

Campbell responds that "if a second complaint naturally 'grows out of' and is 'reasonably related' to a predecessor complaint, the charge filing requirement does not bar subsequent litigation." Dkt. # 14 at 15. Campbell contends that this approach "has been recognized in the federal context as well." *Id.* (citing *Finley v. Salazar*, CV 11-142-M-DWM-JCL, 2013 WL 1209940, at *3-4 (D. Mont. Mar. 25, 2013)). According to Campbell, "[c]learly, the events at issue in the third complaint, culminating with Plaintiff's ultimate separation from the IRS, grew out of and were reasonably related to her prior complaint and were not entirely independent actions." *Id.*

The IRS replies that Campbell's position attempts to "circumvent the statute of limitations by blending all of her allegations of discrete and non-discrete acts into a single, ongoing hostile work environment theory." *Id.* at 7–8 (citing *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003); *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005); *Covarrubias v. Brink's, Inc.*, No. C05-5196, 2006 WL 3203733, at *3 (W.D. Wash. Nov. 3, 2006)). Instead, the IRS says that the Court must "'sift out discrete actionable incidents' from 'non-discrete acts'" to determine which claims are cognizable. *Id.* at 8 (citing *Moore v. King Cnty. Fire Prot. Dist. No. 26*, No. C05-442-JLR, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31,

2005)).  The IRS also contends that Campbell's reliance on *Finley* is misplaced because of the Ninth Circuit's later holding in *Scott*, 888 F.3d 1101, now controls.  *Id.* at 9.

In *Morgan*, an employee of the National Railroad Passenger Corporation (AMTRAK) sued his employer under Title VII of the Civil Rights Act, alleging that he had endured discrete discriminatory and retaliatory acts, as well as a racially hostile work environment.  536 U.S. at 104.  The statute required a plaintiff to file a charge with the EEOC within either 180 or 300 days of the alleged unlawful employment practice.  *Id.* at 105.  This 300-day limitations period applied to Morgan.  *See id.* at 105–06.  "While some of the allegedly discriminatory acts about which Morgan complained occurred within 300 days of the time that he filed his charge with the EEOC, many took place prior to that time period."  *Id.* at 106.  The district court granted summary judgment in part to AMTRAK, "holding that the company could not be liable for conduct occurring before May 3, 1994, because that conduct fell outside of the 300–day filing period."  *Id.*  The Ninth Circuit reversed, "relying on its previous articulation of the continuing violation doctrine, which allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice."  *Id.* at 106–07 (citations and internal quotations omitted).

The Supreme Court disagreed and reversed with respect to this portion of the Ninth Circuit's holding, concluding that discrete acts of retaliation or discrimination were not actionable if time barred, even when they were related to conduct alleged in timely filed administrative charges.  *Id.* at 113–15.  The *Morgan* Court listed "termination, failure to promote, denial of transfer, or refusal to hire" as some examples of such "discrete acts."  *Id.* at 114.  And it clarified that each "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]'" and

these acts must occur within the appropriate limitations period. *Id.* The *Morgan* Court reasoned that

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180–or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The Supreme Court concluded "that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period[,]" *id.* at 105, but it did differentiate these discrete acts from hostile work environment claims, reasoning

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct.

*Id.* at 117–18.[12]

Therefore, under *Morgan*, the Court must decide whether the allegations in Campbell's third EEO complaint are discrete acts, warranting dismissal. *See Moore*, 2005 WL 2898065, at *5 (determining that suspending an employee, placing a warning letter in the employee's file, and subjecting the employee to additional training, drilling, and testing, were all discrete acts of

---

[12] As explained, limitations periods are treated differently for hostile work environment claims. *Morgan*, 536 U.S. at 115; *see Cherosky*, 330 F.3d at 1246 ("*Morgan* makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period, and that claims based on a hostile environment are only timely where at least one act occurred during the limitations period."). Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute" an unlawful employment practice, as long as the claim is timely as to one of those acts, the entire series is actionable. *Morgan*, 536 U.S. at 117. Campbell also asserts that she has presented sufficient facts to support a hostile work environment claim arising from her third complaint. *See* Dkt. # 14 at 13–14. But the IRS does not seek to dismiss Campbell's hostile work environment claims, *see* Dkt. ## 10, 15, so the Court need not address this argument.

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 18

retaliation).  Campbell's three allegations in her third EEO complaint are: (1) she received an unsatisfactory performance rating in June 2020; (2) she received "a notice of opportunity to demonstrate acceptable performance and a 30-day improvement plan" on September 3, 2020; and, (3) a week later, she received a notice of a three-day suspension for failure to follow instructions and unprofessional conduct.  Dkt. # 11-7 at 3.

The Court concludes that all three instances alleged in Campbell's third EEO complaint are discrete acts, and they were untimely raised when Campbell untimely filed her third EEO complaint.  Receiving a poor performance rating, being placed on a performance plan, and then being suspended parallel the examples of discrete acts provided in both *Morgan*, 536 U.S. 101, and *Moore*, 2005 WL 2898065.

Although Campbell contends that the events at issue in the third complaint "grew out of and were reasonably related to her prior complaint," Campbell's reliance on *Finley*, 2013 WL 1209940, at *3-4, is misplaced.  In *Finley*, the district court considered whether Finley had exhausted the administrative remedies for her retaliation claim.  There, the district court decided that "for retaliation claims based on the filing of a complaint with an [EEO] Counselor, administrative exhaustion is not required" and concluded that the Court may adjudicate claims "where the retaliation claim is reasonably related to the administrative complaint."  *Id.* at *2 (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004)).  Applying *Vasquez*, 349 F.3d 634, the *Finley* court concluded that it must consider whether the retaliatory acts alleged fell within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of that charge.  *Id.*  In other words, the *Finley* court concluded that *Vasquez* allowed untimely retaliation claims to go forward when they are reasonably related to other timely filed claims.

But there are significant issues with Campbell's reliance on *Finley*, beyond the fact that it is an unpublished district court case. *Finley* relies on the Ninth Circuit's decision in *Vasquez*, a case inapposite here. In *Vasquez*, the Ninth Circuit considered whether a probation officer's retaliation claim could proceed when he did not include it in his timely EEOC charge. 349 F.3d at 644. On June 23, 1999, Vasquez filed a charge of discrimination, alleging harassment and disparate treatment with the EEOC. *Id.* at 639. After being issued a right-to-sue letter on July 19, 1999, he filed a complaint against the County of Los Angeles under Title VII, alleging the causes of action of harassment, disparate treatment, and retaliation. Because the retaliation cause of action was not brought in the EEOC charge, the appeals court considered whether this retaliation claim was "reasonably related to the EEOC charge" of harassment and disparate treatment to be considered administratively exhausted. *Id.* That inquiry is not before the Court here. Here, Campbell untimely filed her third EEO complaint and contends that the Court should consider the allegations therein as related to her previous timely complaints. But *Vasquez* does not provide any insight here as it is distinct from Campbell's circumstances.

The Ninth Circuit's decision *Scott* is instructive. 888 F.3d 1101. There, the court discussed whether it could consider the allegations included an employee's second administration charge, which was untimely, when the untimely charge included a retaliation allegation related to Scott's first timely administrative charge. Applying *Morgan*, the Ninth Circuit confirmed that "each discriminatory act starts a new clock for filing charges." *id.* at 1112 (citing *Morgan*, 536 at 105). The Ninth Circuit concluded: "[t]o the extent Scott's claims are based on discrete acts occurring after she filed her first [administrative] charge—for example, retaliation for filing the first administrative charge—the district court did not err in granting summary judgment." *Id.* Therefore, under *Scott* and *Morgan*, even if Campbell's late retaliation claims were reasonably related to previously filed timely EEO complaints, they were

still untimely.  Consequently, the discrete acts of discrimination or retaliation alleged in Campbell's third EEO complaint are time barred.

## V

### CONCLUSION

For these reasons, the Court GRANTS the motion.  *See* Dkt. # 10.  The Court DISMISSES Campbell's constructive discharge claim and DISMISSES the claims of discrimination or retaliation alleged in her third EEO complaint.  *See* Dkt. # 11-7 at 3.  The Court also STRIKES Campbell's request for damages "incurred from loss of employment" and an order reinstating her to her position.  Dkt. # 1 at 9–10; *see Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1021 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) ("[a]bsent any injury, an award of back pay or front pay is plainly unwarranted"); *Satterwhite v. Smith*, 744 F.2d 1380, 1381 n.1 (9th Cir. 1984) ("An employee who quits cannot secure backpay unless his employer constructively discharged him.") (citation omitted).  The Court GRANTS Campbell leave until September 30, 2024, to amend her complaint only as to the claims dismissed in this order and certain typographical errors previously identified by the Court.

Dated this 29th day of August, 2024.

*John H. Chun*
_____
John H. Chun
United States District Judge

ORDER GRANTING MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS (DKT. # 10) - 21